No. 47,039

STATE OF KANSAS, *Appellant,* v. ROBERT A. HAREMZA, *Appellee.*

(515 P. 2d 1217)

Opinion filed November 3, 1973.

*Dwight J. Parscale,* Assistant Attorney General, argued the cause, and *Vern Miller,* Attorney General, and *Patrick L. Connolly,* Assistant Attorney General, were with him on the brief for the appellant.

*Robert Bloomer,* of Osborne, argued the cause, and *Lloyd C. Bloomer,* of Osborne, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an appeal by the state in a criminal action. The appellee-defendant, Robert A. Haremza, was charged in the information with two counts of giving a worthless check in the amount of $50 or more as provided by K. S. A. 1971 Supp. 21-3707. The defendant filed his motion to dismiss the information on the grounds that the statute K. S. A. 1971 Supp. 21-3707 is in violation of the United States and Kansas Constitutions. The district court sustained the motion to dismiss on the grounds that the Kansas worthless check law, 21-3707, is "void and unenforceable as a deprivation under the law." From the order of dismissal the state has appealed to this court.

The issue presented to the court on this appeal is purely a question of law—the constitutionality of K. S. A. 1971 Supp. 21-3707. The defendant, Haremza, attacks the constitutionality of the statute on three theories: (1) The statute creates a *prima facie* case against the defendant contrary to the due process clause of the Fourteenth Amendment to the United States Constitution; (2) the statute denies equal protection of the law; and (3) the statute is a collection statute and violates the Kansas Bill of Rights, Section 16, which prohibits imprisonment for debt. Before considering each one of these contentions we should examine carefully the statute in question. K. S. A. 1971 Supp. 21-3707 provides as follows:

"21-3707. Giving a worthless check. (1) Giving a worthless check is the making, drawing, issuing or delivering or causing or directing the making, drawing, issuing or delivering of any check, order or draft on any bank or depository for the payment of money or its equivalent with intent to defraud and knowing, at the time of the making, drawing, issuing or delivering of such check, order or draft as aforesaid, that the maker or drawer has no deposit in or credits with such bank or depository or has not sufficient funds in, or credits with, such bank or depository for the payment of such check, order or draft in full upon its presentation.

"(2) In any prosecution against the maker or drawer of a check, order or draft payment of which has been refused by the drawee on account of insufficient funds, the making, drawing, issuing or delivering of such check shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in, or on deposit with, such bank or depository, providing such maker or drawer shall not have paid the holder thereof the amount due thereon and service charge not exceeding three dollars ($3) for each check, within seven (7) days after notice has been given to him that such check, draft, or order has not been paid by the drawee. The word 'notice,' as used herein, shall be construed to include notice to the person entitled thereto given orally as well as notice given to such person in writing. Notice in writing shall be presumed

to have been given when deposited as restricted matter in the United States mail, addressed to the person to be charged with notice at his address as it appears on such check, draft or order.

"(3) It shall be a defense to a prosecution under this section that the check, draft or order upon which such prosecution is based:

"(a) Was post-dated, or

"(b) Was given to a payee who had knowledge or had been informed, when he accepted such check, draft or order, that the maker did not have sufficient funds in the hands of the drawee to pay such check, draft or order upon presentation.

"(4) Giving a worthless check is a class E felony if the check, draft or order is drawn for fifty dollars ($50) or more. Giving a worthless check is a class A misdemeanor if the check, draft or order is drawn for less than fifty dollars ($50)."

We shall first consider the contention of the defendant that section (2) of 21-3707 is unconstitutional because of "the prima facie evidence" provision. Under section (1) of the statute the intent to defraud and knowledge at the time of the drawing of the check that the drawer has insufficient funds on deposit for the payment of the check in full upon its presentation are required elements of the crime. Section (2) in substance provides that where the state proves (1) that the defendant made or drew a check, (2) that payment for such check was refused by the bank because of insufficient funds, and (3) that the defendant failed to pay the amount due on the check within seven days after notice has been given to him that the check has not been paid by the bank, then proof of such facts shall be *prima facie* evidence that the defendant had an intent to defraud and had knowledge that he did not have sufficient funds on deposit for payment of the check. The defendant contends here and the trial court below held that the *prima facie* evidence provision is a violation of due process of law because it destroys the presumption of innocence and places upon the defendant the burden of proving his innocence and therefore denies him due process of law. What is involved here is simply a statutory presumption that proof of one fact shall constitute presumptive or *prima facie* evidence of another one. This statutory presumption is a rule of evidence to be applied only in the trial of cases involving worthless checks. In his brief counsel for the defendant concedes that the legislature may create a statutory presumption. (*State v. Sheppard,* 64 Kan. 451, 67 Pac. 870.) Statutory presumptions are ordinarily rebuttable. A rebuttable statutory presumption governs only the burden of going forward with the evidence and, even when it

operates against the defendant, it does not alter the ultimate burden of proof resting upon the prosecution, nor deprive the defendant of the benefit of the presumption of innocence. Statutory presumptions have been attacked in practically every jurisdiction in criminal proceedings on the grounds that they constitute a deprivation of due process of law.

The general rule universally applied throughout the United States is that a statutory presumption will be upheld as constitutional if, in accordance with the experience of mankind, there is a natural and rational evidentiary relation between the fact proved and the one presumed; if the defendant has more convenient access to evidence relating to the fact to be presumed; and if, by requiring defendant to go forward with evidence to rebut the presumption, he is not thereby being subjected to unfairness or hardship. (Torcia, Wharton's Criminal Evidence, 13th Ed., Vol. 1, § 94.) This court recognized and followed the rule in *State v. Nossaman*, 107 Kan. 715, 193 Pac. 347, where the following language is used in the opinion:

". . . It is competent for the legislature to make proof of one fact *prima facie* evidence of another fact essential to the guilt of the accused, where the fact presumed has a fair relation to or some natural connection with the fact to be proven. (*The State v. Sheppard*, 64 Kan. 451, 67 Pac. 870; 12 C. J. 1205.) The term *prima facie* evidence carries the inference that such evidence may be rebutted and overcome, and notwithstanding the rule, an accused has the opportunity to submit his evidence and make a full defense. The verdict must rest upon all the evidence which must establish his guilt beyond a reasonable doubt. . . ." (p. 721.)

Comprehensive annotations on this subject may be found in 162 A. L. R. 495, 13 L. Ed. 2d 1138, and in 23 L. Ed. 2d 812. Numerous examples of statutory presumptions applicable in criminal cases which have been sustained as constitutional are set forth in Torcia, Wharton's Criminal Evidence, 13th Ed., Vol. 1, § 94, pp. 156 through 159. The rule has been applied by the United States Supreme Court in many cases among which are: *Turner v. United States*, 396 U. S. 398, 24 L. Ed. 2d 610, 90 S. Ct. 642; *Leary v. United States*, 395 U. S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532; *United States v. Romano*, 382 U. S. 136, 15 L. Ed. 2d 210, 86 S. Ct. 279; *United States v. Gainey*, 380 U. S. 63, 13 L. Ed. 2d 658, 85 S. Ct. 754; and *Barnes v. United States*, 410 U. S. 386, 37 L. Ed. 2d 380, 93 S. Ct. 2357.

Most of the state worthless check statutes throughout this country require the intent to defraud as an essential element of the offense

which must be proved in order to establish a case against an accused. As in Kansas many state worthless check statutes contain a provision creating a *prima facie* presumption of intent to defraud and of knowledge of insufficient funds on proof of the drawing of an insufficient funds check. These provisions vary of course in their form and terminology. See the annotations with cases cited in 35 A. L. R. 375, 43 A. L. R. 49 and 95 A. L. R. 486. The statutory presumption created is invariably rebuttable and a conviction may not be had where the drawer of the check can show that he had reasonable expectation that it would be paid as a result of some arrangement or understanding with the bank, or because he expected to make a deposit sufficient to cover the check before its presentation for payment, or where for any reason he shows that he had a reasonable expectation that the check would be paid on presentation. In criminal cases conclusive presumptions have ordinarily been held unconstitutional on the basis that they invade the province of the jury and shift the burden of proof from the state to the defendant. (*State v. Smith*, 13 Kan. 274.)

K. S. A. 1971 Supp. 21-3707 (2), which creates the statutory presumption involved here, finds its source in K. S. A. 21-555 (*b*). That statute, which is essentially the same as 21-3707 (2), was considered by this court in *State v. Shannon*, 194 Kan. 258, 398 P. 2d 344, where the statutory presumption was described in the opinion as follows:

"The language of the last mentioned section sets forth a rule of evidence only and is permissive in nature. The state may establish a prima facie case of intent to defraud by showing that the seven-day notice, as provided by section 4, has been given to the drawer or maker where the drawee has refused to pay the check upon presentation because of insufficient funds, and should the drawer or maker, after notice, fail to make payment within the period prescribed in the section, a presumption of intent to defraud arises. The state's other option is to prove the drawer's acts were done with intent to defraud the payee or endorser. In the instant case the state chose the latter method and was therefore required to prove the defendant's intent to defraud. The defendant has failed to cite, and our limited research has failed to disclose, any authority or historical basis to sustain his contention that the seven-day notice is a prerequisite to a prosecution for the crime charged under the provisions of section 1 of the act. Again it may be stated that section 1 defines and sets forth the elements of the offense, and section 4 sets forth merely a permissive rule of evidence in the prosecution of the offense declared by section 1. . . ." (pp. 261, 262.)

With these general principles pertaining to statutory presumptions

206

in mind, we now turn to the specific statutory presumption contained in 21-3707 (2). We must first determine whether or not there is a natural and rational evidentiary relation between the fact proven and the ultimate fact presumed under the statute. In order for the presumption to come into play the facts which must be proven are as follows: (1) The defendant must have made or drawn the check; (2) payment must have been refused by the drawee on account of insufficient funds; (3) after notice was given to the defendant that such check was not paid, the defendant failed to pay the holder of the check the amount due thereon within seven days after notice. The proof of such facts is *prima facie* evidence of intent to defraud and of knowledge of the defendant that he lacked sufficient funds in the depository for payment of the check on presentation. We have defined *prima facie* evidence as evidence which, if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it supports, but which may be contradicted by other evidence. (*Van Brunt, Executrix v. Jackson*, 212 Kan. 621, 512 P. 2d 517.) A *prima facie* evidence provision is nothing more or less than a rule of evidence which governs the sufficiency of the evidence to take the case to the jury.

As used in 21-3707 (2), the phrase "intent to defraud" should be construed in accordance with the statutory definition set forth in K. S. A. 1971 Supp. 21-3110 (9), which is as follows:

"(9) 'Intent to defraud' means an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property."

Statutory presumptions in state worthless check laws similar to the presumption found in 21-3707 (2) have been upheld as constitutionally permissible in *Berry v. State*, 153 Ga. 169, 111 S. E. 669, 35 A. L. R. 370; *People v. Bullock*, 123 Cal. App. 299, 11 P. 2d 441; and *State v. Elkin*, 177 La. 427, 148 So. 668. *People v. Vinnola*, _____ Colo. _____, 494 P. 2d 826, cited by the defendant, is not in point because of the peculiar provisions of the Colorado statute which differentiate it from the Kansas statute.

We have no hesitancy in holding in this case that the statutory presumption created by 21-3707 (2) does not constitute a denial of due process of law and satisfies the requirements set forth in the cases discussed above. We find that there is a natural and rational evidentiary relation between the fact proved and the fact presumed

and that a defendant charged with a violation of the worthless check statute has more convenient access to evidence relating to his intent to defraud or otherwise and to his knowledge of the status of his bank account than does the state. We further hold that requiring the defendant to come forward with evidence to rebut the statutory presumption does not subject the defendant to unfairness or hardship.

One of the well-recognized presumptions of law is that a person intends all the natural and probable consequences of his voluntary acts. Where a person has written an insufficient funds check and receives property or other consideration therefor from the payee of the check, and further, where the maker of the check has been notified that the check has not been paid and fails to make payment within seven days after such notice, we find that there is nothing unreasonable or arbitrary in making such fact *prima facie* evidence of fraudulent intent or guilty knowledge. It appears to us that in the usual course of things where one person gives another a check, he intends to induce such person to give up some property right in reliance that the check will be paid on presentation. The notice provision gives to the drawer of the check a final opportunity in which to make the check good and is peculiarly for his benefit. In a worthless check case it is obviously the defendant who has the more convenient access to evidence relating to his intent and knowledge. These are matters within his own head and usually are not within the knowledge of the prosecutor.

We further hold that requiring the defendant to come forward with evidence to rebut the presumption does not subject him to unfairness or hardship. In *Casey v. United States,* 276 U. S. 413, 72 L. Ed. 632, 48 S. Ct. 373, the United States Supreme Court held that throwing upon accused men the burden of coming forward with evidence peculiarly within their knowledge, and hidden from discovery by the government, violates none of their constitutional rights.

We agree with counsel and with the trial judge that a bank depositor who issues an insufficient funds check may be completely innocent and without any intent to defraud. Unforeseen events beyond the control of the depositor often occur. For example, the bank may appropriate a bank account to apply on some overdue indebtedness owed to the bank or a disgruntled spouse may leave home and draw all the money from the joint account of the family

causing the checks of the other to bounce. If such circumstances exist we do not believe that it places any undue burden upon the depositor who has issued the insufficient fund check to come forward with some reasonable explanation showing that he had no intent to defraud. Under our statute a jury is not required to convict the defendant after the state has made a *prima facie* case, although the defendant introduces no evidence whatsoever by way of an explanation. Since the presumption is permissive and not conclusive, the jury may under all the circumstances decide to return a verdict in favor of the defendant. Likewise the trial court may properly take the case from the jury where the defendant's lack of intent to defraud is clearly shown. The burden is never shifted to the defendant to prove his innocence. The presumption of innocence still operates and the jury may exercise its judgment, taking into consideration the facts proven and the statutory presumption.

It is urged that the statutory presumption forces the accused to take the stand in violation of constitutional safeguards enacted for his protection—his privilege against self-incrimination. Such argument has been consistently rejected in many cases involving statutory presumptions, for example, cases where the unexplained possession of recently stolen property raises an inference that the possessor knew the property was stolen. (*Barnes v. United States*, supra, and many Kansas cases including *State v. Kowalec*, 205 Kan. 57, 468 P. 2d 221; *State v. Hardyway*, 205 Kan. 55, 468 P. 2d 116; *State v. Brown*, 203 Kan. 884, 457 P. 2d 130; and *State v. Jenkins*, 197 Kan. 651, 421 P. 2d 33.) On the basis of the authority cited above we hold that the statutory presumption provided in 21-3707 (2) is not unconstitutional as a violation of the due process clause of the Fourteenth Amendment to the United States Constitution.

The defendant's second theory of constitutional invalidity is that 21-3707 denies to the defendant equal protection of the law. The thrust of defendant's argument is that third-party banks have an unbridled discretion to pay or not to pay insufficient fund checks presented to them for payment and hence may control the prosecution of persons in the state under the worthless check act. This contention is likewise without merit. A careful study of 21-3707 (1) shows clearly that the refusal of the bank to pay a check on presentation for payment is not one of the elements of the offense. The statutory elements of the offense are that the defendant issued a

check, that the defendant knew there were insufficient funds in the bank at the time the check was issued and that the defendant did so with intent to defraud. When these elements are established the crime is complete. The statutory presumption set forth in section (2) is simply a permissive rule of evidence and does not add to the elements of the offense as contained in section (1) of the act.

The defendant's third theory of constitutional invalidity is that the worthless check statute is a collection statute which violates the constitutional provision against imprisonment for debt. The contention is not well founded. Section 16 of the Kansas Bill of Rights provides that no person shall be imprisoned for debt, except in cases of fraud. The worthless check statute makes it an offense and punishes a person for a fraud, not because he fails to redeem his check. Attacks on worthless check statutes on this basis have not been upheld in cases where the statute involved makes an intent to defraud a necessary element of the crime. *People v. Vinnola,* supra, held the Colorado statute invalid as a collection device to force payment of a debt because the statute lacked the requirement that there be an intent to defraud.

For the reasons set forth above we hold that the Kansas worthless check statute K. S. A. 1971 Supp. 21-3707 is valid and constitutional. The judgment of the trial court is reversed and the case is remanded for trial of the case on the merits.